This case presents an interesting question of jurisdiction. The bill of complaint shows that Ella L.W. Smith, late of Suffern, New York, was, in her lifetime, the owner of two mortgages covering land in New Jersey. During her last illness and in contemplation of death, Mrs. Smith delivered to the Suffern National Bank and Trust Company two envelopes which each contained a duly executed assignment of one of the mortgages; one assignment running to the complainant Mrs. Buchman and the other to the complainant Mrs. Temple. And Mrs. Smith, at the same time, directed the Trust Company, upon her death, to deliver the envelopes containing the assignments to complainants respectively. Complainants assert that thereby they became, upon Mrs. Smith's death, owners of the mortgages. Mrs. Smith died intestate and her husband was appointed administrator of her estate by the surrogate of Rockland County, New York. A week after his appointment, he executed, as administrator, assignments of the mortgages to himself individually and recorded the assignments in the proper offices in New Jersey. The Trust Company refuses to deliver either to complainants or to Mr. Smith the assignments which had been made by Mrs. Smith in her lifetime. Since complainants do not allege that they have possession of the mortgages, we may assume that Mr. Smith or the bank has them.
The principal prayer of the bill is that the court "declare that said mortgages are the property of these complainants respectively." There are subsidiary prayers that the owners of the mortgaged premises be enjoined from paying the interest or principal to Smith; that he be enjoined from instituting foreclosure and from selling or disposing of the mortgages; that the assignment to him be set aside and annulled; and that the Trust Company be enjoined from delivering the assignments which it holds except pursuant to the decree of this court.
Upon the filing of the bill, an order to show cause was made containing temporary restraints designed to hold the situation until the return day. Mr. Smith has appeared specially and moves to vacate the order to show cause and *Page 248 
dismiss the bill because he is a non-resident, and the order was not served upon him within New Jersey but was mailed to him at his residence in New York, and the court is therefore without jurisdiction. Mr. Smith, as administrator, is named a defendant, although the bill does not pray relief against him in such capacity, or allege that he claims an interest in the mortgages. So the motion will be granted as to the administrator, and the following discussion will be confined to the motion of Mr. Smith individually.
Although the order to show cause was not served on Mr. Smith within the state, it was mailed to him in accordance with the terms of the order. No statute or rule of court requires service of such an order within the state. See Rule 212. Injunctive orders, made without any notice whatever, are of every day occurrence and of undoubted validity. For the past seventy-five years in our Court of Chancery, they have usually been embodied in orders to show cause, like the one now before me. But in the old days, there was seldom an order to show cause; the injunction was ordinarily granted ex parte on filing the bill, and continued in effect until the defendant appeared and answered.Buckley v. Corse, 1 N.J. Eq. 504; Capner v. FlemingtonMining Co., 3 N.J. Eq. 467; Perkins v. Collins, 3 N.J. Eq. 482.Ex parte interlocutory injunctions have validity not only because the practice is rooted in antiquity, but because such injunctions are necessary for the reasonable protection of complainants and do not depend upon an adjudication of the rights of the parties. They do not impinge constitutional requirements of due process of law. 16 C.J.S. 1231.
The procedure by order to show cause why an interlocutory injunction should not issue came to prevail over the older practice in order that the defendant need not wait till he had filed his answer before attacking the injunction, but might have an earlier opportunity to do so, namely, on the return day. His opportunity is not dependent on service of process in any technical sense, but results from actual notice of the hour and place of the hearing of the order to show cause. Timely notice by mail addressed to the defendant at his residence is effective and, if permitted by the court, *Page 249 
is sufficient to enable the court to hear the matter on the return day. Since no notice of an application for an interlocutory injunction is requisite to its validity, notice by mail, or served outside the state, does not deprive the court of jurisdiction to issue such an injunction. Not only is notice of the application unnecessary, but the injunction, when issued, binds the conscience of one who has knowledge of its terms, although he is not served with it. In re Wholesale, c.,Salesmen's Union, 125 N.J. Eq. 539; Haring v. Kauffman, 13 N.J. Eq. 397; Ex parte Lennon, 166 U.S. 548; 17 S.Ct. 658.
The rules which we have been considering are limited in effect by another rule, that generally an injunction will not issue against a non-resident unless he be actually served within the jurisdiction with process, or at least with notice, of the motion for the injunction. Elgart v. Mintz, 123 N.J. Eq. 404; NewarkInternational Baseball Club, Inc., v. Theatrical Managers, c.,Union, 125 N.J. Eq. 575. But in an action in rem, or quasi inrem, an injunction may be granted against a non-resident, who has not been served within the state. Kempson v. Kempson,63 N.J. Eq. 783; Wilentz v. Edwards, 134 N.J. Eq. 522.
Originally all equity jurisdiction operated in personam, but in our own Court of Chancery at the present time, the great bulk of litigation may be classified as quasi in rem — in which theres is the matrimonial status, or a decedent's estate, or a trust fund, or the property of a domestic corporation, or land. An action quasi in rem is one in which substituted service by publication is permissible. Our statute, R.S. 2:29-28, authorizes this procedure without any limitation based on the character of the suit. Kirkpatrick v. Post, 53 N.J. Eq. 591,641. But the operation of the statute is limited by the due process clause of the Fourteenth Amendment. So we may reach the definition that an action of the kind under consideration is one in which a decree against a non-resident, based on service by publication does not violate due process of law.
The characteristics of an action quasi in rem are well dealt with in Redzina v. Provident Institution for Savings, c., *Page 250 96 N.J. Eq. 346; Amparo Mining Co. v. Fidelity Trust Co.,74 N.J. Eq. 197; 75 N.J. Eq. 555, and Wilentz v. Edwards,supra. Fundamentally, jurisdiction depends upon physical power. Jurisdiction in rem rests upon a res within the control of the court and subject to the exercise of its power. The res
need not be in the custody of the court, as it is, for example, when seized on a writ of sequestration. It is enough that theres be within the state and in the possession of the complainant, or a resident defendant who has been brought into court by service within the state and through whom the court can exercise power over the res. The scope and variety of actionsquasi in rem have been growing rather steadily for many years as a natural result of narrow territorial bounds of the jurisdiction of American courts, coupled with a diversity of residence of persons holding interests in the same property. If persons living in three or more separate states are concerned, resort to an action quasi in rem is apt to be necessary if their titles are to be adjudicated. This expanding trend was noticed by Mr. Justice Case in Wilentz v. Edwards, supra.
In the case before me, the mortgaged land is here in New Jersey; and has been brought within the power of the court by service of process upon the owner. If the mortgage be conceived of as a lien upon the land, then it seems to me that the res is the land and the court may determine the conflicting claims to the lien. But if the essence of the mortgage be the paper-writing, then the document itself may be the res. Or if the essence is a mere personal obligation, there is no res at all.
The Restatement-Conflict of Laws, § 48-50, sets forth that where a right or the title to a chattel is embodied or merged in a document, the right or the title to the chattel is subject to the jurisdiction of the state which has jurisdiction over the document. The Restatement does not attempt to specify in what various situations property interests are embodied in documents. In general, this rule is applied to negotiable instruments or papers having a large degree of negotiability, such as bills of lading, stock certificates and bearer bonds. First Trust Co. v.Matheson (Minn.), 246 N.W. Rep. 1; 87 A.L.R. 478. *Page 251 
Few instruments have less negotiability, either in law or in commercial practice, than the ordinary mortgage. Its sale commonly involves an appraisal of the land and an examination of the title. The buyer takes subject to all defenses of the owner of the land. The production of the document is not essential either for demand of payment, or for foreclosure. Massaker v.Mackerly, 9 N.J. Eq. 440; Wilson v. Stevens, 105 N.J. Eq. 377.
By our statute, the record of a mortgage which has been duly recorded, is as good evidence as the original instrument, at least where the original is beyond the control of the party offering the record. R.S. 2:98-23 and 26. In New Jersey, a mortgage is not a mere security for a bond which accompanies it, but the land itself is the primary fund for payment of the debt, and the mortgagee must first proceed by foreclosure against the land. R.S. 2:65-2. Fidelity Union Trust Co. v. Gottlieb,125 N.J. Eq. 152.
In a great variety of situations, non-resident mortgagees and lienors have been brought into court by publication and decrees adjudicating their interests in the land have been upheld against objection that due process has not been accorded them. For example, suits to quiet title, to partition, to foreclose prior liens, and to redeem. Grannis v. Ordean, 234 U.S. 385;34 S.Ct. 779; Arndt v. Griggs, 134 U.S. 316; 10 S.Ct. 557;Froelich v. Swafford (S.D.), 150 N.W. Rep. 476, 893. Such cases rest upon the principle that the mortgage is an interest in or lien upon the land, and that a court which acquires jurisdiction over the land has also jurisdiction in rem over the mortgage.
But counsel argue that such jurisdiction can be exercised only in litigation between the mortgagee and the owner of some other interest in the land and not in a controversy between two claimants to the mortgage, in which title to the mortgage is the issue. I know of no principle which supports that position. The analogy is close between a proceeding to determine who owns the mortgage and one to settle who is entitled to a decedent's estate, who is the next of kin. Or a suit to settle the title to shares of stock in a domestic corporation. Andrews v.Guayaquil, c., Co., 69 N.J. Eq. *Page 252 211; 71 N.J. Eq. 768; Sohege v. Singer Manufacturing Co.,73 N.J. Eq. 567.
The principal relief which complainants seek is a declaratory judgment that they own the mortgages, a judgment that will bind Smith as well as the owners of the land, so that the latter may safely recognize complainants' title. Such a decree is purely inrem. If complainants need ancillary relief to establish their position, it may take the form of an order for apt entries in the county records of mortgages and assignments. No personal decree against Smith is essential. But meanwhile, the injunction against him is justified so that no innocent purchaser for value shall enter the situation.
Hartman v. Collum, 126 N.J. Eq. 629, reversing 125 N.J. Eq. 325,
cited by defendant, is not controlling. It was a suit against the administrator of a New York decedent's estate, about a mortgage and the bond as well, which were part of the estate, and all the parties to the suit were non-residents of New Jersey.
The motion will be denied.